UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSALYN GRACE,

        Plaintiff,

v.

USCAR and BARTECH TECHNICAL
SERVICES, LLC,

        Defendants.

_____/

Case No. 05-72847

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [39 and 41]**

Pending before this Court are Defendant USCAR's Motion for Summary Judgment and Defendant Bartech Technical Services, LLC's ("Bartech's") Motion for Summary Judgment, both filed on June 1, 2006.  USCAR and Bartech are collectively referred to as "Defendants".  Plaintiff Rosalyn Grace brought suit against Defendants alleging (1) a violation of the Family and Medical Leave Act ("FMLA") for failing to return Plaintiff to her pre-leave position (or a comparable position) and for retaliation, (2) unlawful gender discrimination under Title VII of the Civil Rights Act for replacing her with a lesser qualified male employee and creating a hostile work environment, and (3) unlawful gender discrimination under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") for the same reasons.  Plaintiff's gender discrimination claims against Bartech rest upon a joint employment theory that would make Bartech liable for the actions of its co-employer, USCAR.

1

As to all three counts, USCAR argues that these statutes do not apply because USCAR is not Plaintiff's employer and does not have the threshold number of employees.  USCAR also asserts alternative defenses to each count.  As to Count 1, USCAR argues that (i) Plaintiff did not notify them of her right to FMLA leave, (ii) Plaintiff is not entitled to FMLA leave because she had not worked at Bartech for twelve months at the time of her leave, (iii) USCAR did not interfere with Plaintiff's entitlement to return to her pre-leave position, and (iv) Plaintiff has not presented any evidence that USCAR retaliated against her for taking such leave.  As to Count 2, USCAR argues that (i) Plaintiff has not presented any evidence of a prima facie case of gender discrimination, and (ii) Plaintiff has not shown that a hostile work environment was created.  As to Count 3, USCAR asserts that (i) Plaintiff has not presented any evidence of a prima facie case of gender discrimination, and (ii) the ELCRA does not cover gender harassment.[1]

As to Count 1, Bartech argues that (i) Plaintiff is not entitled to FMLA leave because she had not worked at Bartech for twelve months at the time of her leave, (ii) Bartech did not interfere with Plaintiff's entitlement to return to her pre-leave position, and (iii) Plaintiff has not presented any evidence that Bartech retaliated against her for taking such leave.  As to Count 2, Bartech argues that (i) it is not liable for USCAR's actions as a joint employer because Plaintiff never notified Bartech of the alleged discrimination, (ii) Plaintiff has not presented any evidence of a prima facie case of

---

[1]In addition, Plaintiff's only basis for subject matter jurisdiction over the state law ELCRA claim is supplemental jurisdiction.  As such, if the FMLA and Title VII claims are dismissed, this claim would be automatically dismissed on jurisdictional grounds.

gender discrimination, and (iii) Plaintiff has not shown that a hostile work environment was created.  As to Count 3, Bartech asserts that (i) Plaintiff has not presented any evidence of a prima facie case of gender discrimination, and (ii) the ELCRA does not cover gender harassment.

For the reasons set forth below, the Court GRANTS Defendant USCAR's motion for summary judgment, GRANTS Defendant Bartech's motion for summary judgment, and this case is DISMISSED.

## I.  FACTS

Plaintiff Rosalyn Grace worked in several information technology ("IT") positions for Defendant USCAR beginning in 1996.  (Compl. ¶ 7.)  USCAR is a partnership formed between Ford Motor Company, DaimlyerChrysler Corporation and General Motors Corporation, created to facilitate research and development ("R & D") programs that benefit the U.S. automotive industry.  (USCAR's Mot. for Summ. J. at 2.)  All of the people working at USCAR are either contractors hired from various employment agencies or full-time employees of one of the partner automotive companies that are provided on loan to USCAR.  *Id.*  These individuals provide various administrative and support functions to USCAR, which automotive company employees use as a meeting place for collaborative discussions of R & D matters.

At all times of her service to USCAR, Plaintiff was employed as a contract employee by various employment agencies which provided workers to USCAR.  Until January 2004, Plaintiff's employment agency was named DGE.  Upon that entity's bankruptcy filing, Co-Defendant Bartech began servicing the USCAR account and employed Plaintiff along with several other former DGE employees who worked at

3

USCAR.  (Bartech's Mot. for Summ. J. at 1.)  Plaintiff's duties stayed the same
throughout her move from one employment agency to another.  (Pl's Resp. to USCAR's
Mot. at 3.)  Bartech has never been affiliated with DGE, nor did Bartech acquire any of
DGE's assets as a result of its bankruptcy.  (Bartech's Mot. for Summ. J. at 2.)

During the time period in question, USCAR's Executive Director was Patricia
Flaherty.  (USCAR's Mot. for Summ. J. at 4.)  Plaintiff reported directly to Flaherty
(Compl. ¶ 12.) and USCAR's Director of Operations, Michael Martin.  (Pl.'s Resp. to
USCAR's Mot. at 4-5.)  Although Plaintiff states that she did not get along with Flaherty,
she and Martin were friends. (Grace Dep. at 110-11.)

Plaintiff developed a respiratory disability during the fall of 2004 that eventually
resulted in her hospitalization from November 17-26, 2004.  (Compl. ¶¶ 16, 19.)  As a
result, she was unable to continue working at USCAR, and took leave from her position,
with an expected return date of January 3, 2005.  (Compl. ¶ 27.)  On December 30,
2004, Bartech told Plaintiff that USCAR notified Bartech that it had decided to outsource
Plaintiff's duties and that her position was terminated.  (Comply. ¶ 28.)  Plaintiff's
recovery took longer than initially expected, and upon notifying Defendants that she was
cleared to return to work in February 2005, Defendants again told Plaintiff that her
position had been eliminated and that none remained for her.  (Compl. ¶ 30.)

Defendants assert that USCAR management decided to undergo an internal
restructuring during 2004.  As part of this process, USCAR's management team
considered switching from using full-time contractors from agencies such as Bartech to
contracting directly with individual providers of services on an as-needed basis.
(USCAR's Mot. for Summ. J. at 5.)  One such position targeted for change was the IT

4

Manager, held by Plaintiff.  On December 13, 2004, Flaherty recommended, and USCAR's Leadership Group approved, the elimination of Plaintiff's full-time position in favor of hiring a part-time consultant when necessary.  (USCAR's Mot. for Summ. J. at 8-9.)  Although USCAR admits that this position was paid at a higher rate than Bartech's billing rate for Plaintiff's services, the 50% reduction in hours required would result in overall cost savings.  (USCAR's Mot. for Summ. J. at 10.)

Also in December 2004, USCAR hired another Bartech contractor, Brian Spolarich, to handle regular IT maintenance issues during Plaintiff's absence. (USCAR's Mot. for Summ. J. at 8.)  Then, in May 2005, Martin (still USCAR's Director of Operations) decided to contract directly with Spolarich to permanently fill the new IT position at USCAR.  This was a 20 hour per week position.  (Pl.'s Resp. to USCAR's Mot., Ex. I.)  By this time, Flaherty had left her position with USCAR and did not participate in the final decision to hire Spolarich on a permanent basis.  (USCAR's Mot. for Summ. J. at 10.)

Plaintiff contends that the putative reorganization is merely a pretext for USCAR's unlawful behavior towards her.  Plaintiff asserts that Spolarich was working an additional ten to fifteen hours per week developing a database application for Automotive Composite Consortia ("ACC"), an affiliate of USCAR.  Furthermore, USCAR was paying Spolarich either $62 or $75 per hour,[2] while the billing rate USCAR paid to Bartech for Plaintiff's services was $58.66.  (Pl.'s Response to USCAR's Mot. at 14.)  Plaintiff argues that when the additional ACC hours and the higher rates paid to Spolarich are

---

[2]The higher figure was for emergency work for USCAR as well as the entire contract with ACC.

included, Defendants would no longer be saving money compared to Plaintiff's full-time position.  Therefore, this reason for eliminating her position was merely pretextual.

## II.  STANDARD OF REVIEW - MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party.  *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

6

## III. ANALYSIS

### A. Family and Medical Leave Act

The FMLA grants certain rights to eligible employees who have worked for at least twelve months at a qualifying employer,[3] allowing the employee to take up to twelve weeks of leave for a variety of reasons, including a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §§ 2611(2) and 2612(a)(1). It is undisputed that Plaintiff's illness constitutes a serious health condition that is covered under the FMLA. In general terms, an eligible employee is entitled to immediate return to the position held prior to taking leave once the leave period is over. According to Plaintiff's counsel during oral argument on this motion, the only FMLA claim in this case is Plaintiff's right that her employer not

―――――――――――――

[3]Defendant USCAR makes much of the distinction between itself and Co-Defendant Bartech, noting that Plaintiff is actually employed by Bartech, and that USCAR does not have any of its own employees – only contract workers and individuals on loan from Ford, General Motors and DaimlerChrysler. The FMLA regulations, however, specifically state that "joint employment will ordinarily be found to exist when a temporary or leasing agency supplies employees to a second employer." 29 C.F.R. § 825.106(b). In such circumstances, "[a] secondary employer is also responsible for compliance with the prohibited acts provisions with respect to its temporary/leased employees, whether or not the secondary employer is covered by the FMLA." 29 C.F.R. § 825.106(e). Therefore, regardless of how few employees USCAR itself has, if Plaintiff has a valid FMLA claim against the primary employer, Bartech, USCAR is subject to the FMLA as a secondary employer, because it is undisputed that Bartech has greater than the fifty employees that the FMLA requires for the Act to apply. 29 U.S.C. § 2911(4)(A)(I).

The regulations also state that "[f]or employees of temporary help or leasing agencies . . . the placement agency most commonly would be the primary employer." 29 C.F.R. § 825.106(c). By implication, USCAR would be the secondary employer here.

Bartech admits that it is Plaintiff's employer for purposes of the FMLA.

7

interfere with the right to have her position back following leave, 29 U.S.C. § 2615(a)(1).

Plaintiff does not assert a claim for retaliation or discrimination under 29 U.S.C. §

2615(a)(2).

> **1. Bartech is not a successor in interest to DGE, so Plaintiff is not a qualified employee under the FMLA because she was not employed by Bartech for twelve months when she became disabled**

Defendants USCAR and Bartech assert that the FMLA does not apply in this

situation because Bartech did not employ Plaintiff for the required statutory period of

twelve months for her to be eligible for FMLA coverage at the time of her hospitalization.

29 U.S.C. § 2611(2)(A)(i).  Included in the FMLA definition of "employer," however, are

"any successor[s] in interest of an employer."  29 U.S.C. § 2611(4)(A)(ii)(II).  Therefore,

if Plaintiff can show that Bartech was a successor in interest to DGE, Plaintiff's total time

of employment with the two companies would be more than twelve months and she

would have protectable rights under the FMLA.

29 C.F.R. § 825.107 defines "successor in interest" as follows:

> (a) For purposes of FMLA, in determining whether an employer is covered because it is a "successor in interest" to a covered employer, the factors used under Title VII of the Civil Rights Act and the Vietnam Era Veterans' Adjustment Act will be considered. However, unlike Title VII, whether the successor has notice of the employee's claim is not a consideration. Notice may be relevant, however, in determining successor liability for violations of the predecessor. The factors to be considered include:
>
> (1) Substantial continuity of the same business operations;[4]
>
> (2) Use of the same plant;

_____

[4]Bartech included a separate section in its brief regarding this individual consideration, but given that one factor alone is not determinative, this Court sees no need to discuss this issue separately here.

8

(3) Continuity of the work force;

(4) Similarity of jobs and working conditions;

(5) Similarity of supervisory personnel;

(6) Similarity in machinery, equipment, and production methods;

(7) Similarity of products or services; and

(8) The ability of the predecessor to provide relief.

(b) A determination of whether or not a "successor in interest" exists is not determined by the application of any single criterion, but rather the entire circumstances are to be viewed in their totality.

Bartech includes considerable argument in both its initial brief supporting its motion for summary judgment as well as its reply brief asserting that it did not substantially continue DGE's operation because not enough former DGE employees were hired by Bartech after the former entity filed for bankruptcy. Bartech is correct that Sixth Circuit labor law cases have described this first consideration in the succession analysis as a "threshold inquiry," and have required that a majority of the new employer's employees be hired from the former employer in order to consider the other factors that lead to a finding of continuity. *See 3750 Orange Place Ltd. Partnership v. NLRB*, 333 F.3d 646, 655 (6th Cir. 2003); and *Straight Creek Mining, Inc. v. NLRB*, 164 F.3d 292, 295. Bartech is incorrect, however, when it posits that the majority of the new employer's *total number of employees* must have been hired from the former employer. Bartech argues that because it only hired five DGE employees from USCAR and thirty DGE employees from other clients, this does not constitute a majority of Bartech's employees, because Bartech employed a total of over 1,800 people at that time.

In contrast to the instant case, the *3750 Orange Place* and *Straight Creek* cases

9

involved situations where the new employer appeared to have been created specifically to take over operations of one particular facility.[5]  Here, however, Bartech was a large existing company with many current employees that hired a number of individuals who previously worked for DGE.  If Bartech's reasoning were adopted, then any large entity that absorbed a much smaller company in any fashion would never be considered to be a substantial continuation of the small company, and the small company's former employees could never enforce their labor or FMLA rights against the large entity.  This result is inconsistent with the intent of the law and with the Sixth Circuit decision in *Cobb v. Contract Trans., Inc.*, 452 F.3d 543 (6th Cir. 2006) (*see infra*).

In this case, five of the seven former DGE employees began employment with Bartech after the former employer filed for bankruptcy.  (Pl.'s Resp. to Bartech's Mot., Ex. B.)  Thus, a majority of the former DGE employees were hired by Bartech, so the threshold issue was met in this case, and it is proper for this Court to consider the remaining succession analysis factors.

Bartech initially argued that existing case law on labor and FMLA issues of corporate succession require a transfer of stock or assets in order for there to be a successor in interest.  The Sixth Circuit recently decided, however, that a corporate merger or acquisition is *not* required for there to be a successor in interest for FMLA purposes.  *Cobb v. Contract Trans., Inc.*, 452 F.3d 543 (6th Cir. 2006).

In *Cobb*, the plaintiff worked for Byrd Trucking, a trucking company that delivered

---

[5]In *3750 Orange Place* the business involved was one specific hotel, and in *Straight Creek* it was one coal mine.

mail for the U.S. Postal Service ("the USPS").  As part of its regular two-year bid cycle,

the USPS put the contract up for bid, and Contract Transport underbid Byrd.  95% of the

drivers who previously worked for Byrd signed on with Contract after the changeover.

Most, including the plaintiff, continued driving the exact same routes that they did for

Byrd.

        In a case of first impression, the court noted that the FMLA was rooted in federal

labor law, and analogized to such cases in holding that the existence of a merger or

acquisition is *one additional factor* to consider when determining if the defendant is a

successor in interest, but that such a corporate transaction is *not required*.  The court

also looked to the factual reality of the situation and noted that

> [p]laintiff's employment has been continuous.  Plaintiff has carried U.S.
> mail on the exact same route, with the exact same relay stops, for the past
> three years.  In reality, it is as if Plaintiff works for the USPS and not for
> one particular trucking company.  Only the management, not the job, has
> changed.

*Id.* at 557.

        The case at bar is quite similar to *Cobb*, and the fact that Plaintiff's job

responsibilities, location, working conditions and manager did not change in any fashion

following her employment with Bartech militates towards a finding that Bartech is a

successor to DGE under the factors to be considered according to the regulations.

Although Plaintiff argues that *Cobb* is dispositive of the issue presented to this Court,

the Sixth Circuit also noted that an "equally important" factor was that the USPS

contract at issue was automatically put up for re-bid every two years.  *Id.*  Under such a

scenario, which is not present here, employees of the incumbent trucking contractor

11

would be put at a disadvantage by having their FMLA rights eliminated every two years once a new company won the bid.[6]  Co-Defendant Bartech also argues that giving new employees rights under the FMLA before they actually work for the new employment agency for the twelve month statutory period will result in a desire to hire fewer employees in situations such as the case at bar.

The applicable regulations direct this Court to undertake an equitable analysis to determine whether Defendant is a successor employer.  Despite the similarities with some of the facts in *Cobb*, however, and given the Sixth Circuit's emphasis on the two-year re-bid process present in *Cobb*, however, there is not enough weight on Defendant's side of the equitable scale for Bartech to be held a successor in interest to DGE, once the concern of employees losing their FMLA rights on a regular basis is removed from the analysis.  Where, as here, the change that resulted from DGE's bankruptcy was neither a tactical maneuver, nor will result in inherent unfairness on a recurring basis for the employees involved, there is no corresponding need to impose upon Bartech the burden of absorbing DGE's existing FMLA liabilities.[7]

Any duty that USCAR has under the FMLA as a secondary employer is strictly derivative of a corresponding duty at Bartech.  Since Bartech is not a successor in

---

[6]The court presumed that the incoming company would be able to make a lower bid because the ongoing FMLA costs that an incumbent company would have to bear would not apply to the incoming company for the first year of the contract period.

[7]Although Bartech did step in and attempt to make a "seamless transition" between DGE and itself, (Pl.'s Resp. to USCAR's Mot. to Dismiss at 3.) the fact remains that Plaintiff would be in no worse of a position relative to FMLA rights than she would had DGE simply gone out of business without an orderly transition to Bartech, as her qualifying time for FMLA purposes would most certainly have reset under that scenario.

12

interest of DGE, Plaintiff does not meet the threshold requirement of twelve months' service to Bartech in order to be eligible for leave under the FMLA and Bartech does not have a duty to Plaintiff under the Act..  Therefore, Plaintiff's FMLA claim against Defendants must be dismissed as a matter of law.

### B.  Gender discrimination and creating a hostile work environment under Title VII of the Civil Rights Act

#### 1.  USCAR does not meet the definition of an "employer" for purposes of Title VII

As noted previously, USCAR defends against all of Plaintiff's claims by arguing that it is not a qualifying employer for purposes of the statutes at issue because it does not have any formal employees, and therefore does not meet the numeric statutory requirement for each charge.  Specifically, Title VII requires that an employer have fifteen or more employees in order to be covered under the statute.  42 U.S.C. § 2000e(b).  As described above, the FMLA regulations state that USCAR qualifies as a secondary employer under that statute because it contracted for Plaintiff's services through Bartech and is thus subject to the FMLA's provisions.  Although plaintiff responded to USCAR's defense with regards to the FMLA regulations, she failed to do so as to Title VII.

Title VII does define the term "employment agency," and the definition arguably covers Bartech in this situation, but any effect this would have on USCAR's coverage under Title VII is not clear.[8]  Without any regulatory provisions creating a statutory joint

---

[8]When employment agencies are discussed in Title VII, it is in the context of prohibiting them from refusing to refer an eligible employee for employment based upon

employer relationship under Title VII, Plaintiff must look to common law concepts to attempt to bring USCAR within the coverage of Title VII.

Plaintiff argues, without statutory or regulatory support, that because USCAR is a general partnership formed by Ford, General Motors and DaimlerChrysler, that the numbers of individuals employed by those entities should be counted in meeting the statutory minimum. This argument disregards the fact that USCAR itself does not have any employees – all of the individuals who work there are actually employees of one of the automotive company partners or contract workers hired from firms like Bartech. As a contractor, Plaintiff was not paid directly by USCAR, nor did USCAR withhold taxes or pay for any benefits on her behalf. Although USCAR had the power to tell Bartech when Plaintiff was no longer needed, USCAR had no control over Plaintiff's continued employment with Bartech nor her ability to be placed on another project with a different Bartech client. Without any statutory or regulatory support similar to that which Plaintiff cited for the FMLA regarding a joint employment relationship between USCAR and Bartech, USCAR does not meet the statutory definition of an "employer" under Title VII, and this claim against USCAR must be dismissed as a matter of law.

**2.  Plaintiff did not give Bartech sufficient notice of the alleged gender discrimination for Bartech to be jointly liable for USCAR's conduct**

Even though USCAR is not directly liable under Title VII because it is not an

---

one of the applicable characteristics.  42 U.S.C. § 2000e-2(b).  This is in addition to the general prohibitions that apply to all employers under 42 U.S.C. § 2000e-2(a).

14

employer, Plaintiff may still be able to argue that Bartech is liable for USCAR's actions under the doctrine of joint employment from agency law.[9]  In situations involving joint employers, the employee "must show that the defendant knew or should have known of the discriminatory conduct [by the other joint employer] and that it failed to take those corrective measures within its control."  *Caldwell v. Servicemaster Corp.*, 966 F.Supp. 33, 46 (D.D.C. 1997)   Although a number of federal district courts have considered the issue of whether common law joint employment concepts apply to cases involving temporary agencies under Title VII, the holdings are not uniform.  At least two district courts held that temporary agencies and their clients could be joint employers,[10] and three other district courts assumed, *arguendo*, that the defendants were joint employers under Title VII.[11] On the other hand, four district courts have held that temporary agencies and their clients are not joint employers.[12]  For purposes of Plaintiff's gender discrimination claims, Bartech stipulates that it is a joint employer of Plaintiff along with USCAR.  Since there is existing authority for the proposition and Bartech stipulates the

---

[9]This is a separate and distinct concept from the regulatory use of the term joint employment discussed in conjunction with Plaintiff's FMLA claims, *supra*.

[10] *Williams v. Grimes Aerospace Co.*, 988 F.Supp. 925, 937-38 (D.S.C. 1997); and *Magnuson v. Peak Technical Servs., Inc.* 808 F.Supp. 500, 513 (E.D. Va. 1992).

[11]*Neal v. Manpower Int'l, Inc.*, No. 3:00-CV-277-LAC 2001 WL 1923127 at *9 (N.D. Fla. Sept. 17, 2001); *Riesgo v. Heidelberg Harris, Inc.*, 36 F.Supp.2d 53, 58 (D.N.H. 1997); and *Caldwell*, 966 F.Supp. at 46.

[12]Most of these holdings rested on the fact that the temporary agency did not control the employee's day to day activities.  See *Watson v. Adecco Employment Servs., Inc.*, 252 F.Supp.2d 1347, 1357 (M.D. Fla. 2003) (citing *Williams v. Caruso*, 966 F.Supp. 287 (D. Del. 1997); *Astrowsky v. First Portland Mortgage Corp.*, 887 F.Supp. 332 (D. Me. 1995); and *Kellam v. Snelling Personnel Servs.*, 866 F.Supp. 812, 815-16 (D. Del. 1994)).

same, this court will assume, *arguendo*, that Bartech and USCAR are joint employers for purposes of Title VII liability.  Therefore, if Plaintiff can show that Bartech was aware of USCAR's discriminatory conduct and did not take action, she could still maintain a Title VII claim against Bartech even though USCAR is not an employer for purposes of Title VII.

In attempting to meet her burden of notice, Plaintiff cites to numerous situations where she and other Bartech contract workers complained to Bartech employees about Flaherty's treatment of them.  (Pl.'s Resp. to USCAR's Mot. at 9, 10.)  She also alludes to situations where individuals at Bartech responded by telling her to "just try and make it through the next few months" until Flaherty was set to leave her position at USCAR. (Grace Dep. at 100, 126.)  Still, Plaintiff herself admits that she did not make any complaint of discrimination directly to Shimon at Bartech.  (Grace Dep. at 329.)  In fact, she did not make a written or verbal complaint of discrimination to *anyone* at Bartech, (Grace Dep. at 324-25.) even though she acknowledges receiving a copy of Bartech's human resources handbook, (Grace Dep. at 315.) which notes that employees with complaints about discrimination "should contact their Company representative or the Human Resources Director."  (Bartech Mot. for Summ. J., Ex. H.)  At best, she says she told Shimon about Martin "being treated differently than the girls," (*Id.* at 330.) and complained to a number of individuals inside and outside Bartech about Flaherty.  (Pl.'s Resp. to USCAR's Mot. at 9.)  Plaintiff also admits that she "may not have specifically used the words 'bias' or 'gender' or 'discrimination'" when making these complaints. (Pl.'s Resp. to USCAR's Mot. at 9.)  Plaintiff has not produced sufficient evidence that

16

she notified Bartech of the alleged gender discrimination for Bartech to be liable for

USCAR's actions as a joint employer.  Defendant is entitled to summary judgment on

this issue.

### C.  Gender discrimination and creating a hostile work environment under Michigan's Elliott-Larsen Civil Rights Act

Plaintiff's sole basis for subject matter jurisdiction in this Court for her state law

claim is supplemental jurisdiction.  28 U.S.C. § 1367.  Since the Court is dismissing

Plaintiff's claims arising under federal law, subject matter jurisdiction no longer exists for

the state law claim, and it must also be dismissed as a matter of law.

## IV.  CONCLUSION

For the reasons stated above, Defendant USCAR's motion for summary

judgment [41] is GRANTED, Defendant Bartech's motion for summary judgment [39] is

GRANTED and this case is DISMISSED.

SO ORDERED.


s/Nancy G. Edmunds_____
Nancy G. Edmunds
United States District Judge

Dated:  October 4, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of
record on October 4, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer_____
Case Manager

17